UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RICO LAMONT MITCHELL,

        Plaintiff,

v.

                                      Case No. 3:17-cv-751-J-34PDB

J.M. PERKINS,
et al.,

        Defendants.

**ORDER**

**I. Status**

Plaintiff Rico Lamont Mitchell, an inmate of the Florida penal system, initiated this action on June 29, 2017, by filing a pro se Civil Rights Complaint (Doc. 1). Mitchell filed an Amended Complaint (Doc. 7) on August 2, 2017, a Second Amended Complaint (SAC; Doc. 16) on December 6, 2017, a Third Amended Complaint (Doc. 35) on November 14, 2018, and a Fourth Amended Complaint (Doc. 38) on February 13, 2019. The Court granted Mitchell's motion for leave to file a fifth amended complaint and directed the Clerk to file Doc. 46-1 as the Fifth Amended Complaint (FAC; Doc. 50). See Order (Doc. 49). In the FAC, Mitchell asserts claims pursuant to 42 U.S.C. § 1983 against the following Defendants: (1) J.M. Perkins, a clerk in the mail room at the Pretrial Detention Facility (Jail) in Jacksonville, Florida; (2) Sergeant Clark, a supervisor in the Jail's mail room; (3) Lieutenant Smith, a supervisor in the Jail's mail room; (4) Detective Eileen Simpson; and (5) Sergeant Peoples.[1] He asserts that Defendants either tampered with his incoming

---

[1] The Court dismissed Mitchell's claims against Sergeant Peoples, see Order (Doc. 28), and later denied Mitchell's request to add Peoples as a Defendant, see Order (Doc. 49).

and outgoing mail or failed to stop the violations. As relief, Mitchell requests compensatory and punitive damages as well as declaratory relief.

This matter is before the Court on Defendants' Motion to Dismiss (Motion; Doc. 51). They submitted exhibits in support of the Motion. See Def. Exs., Docs. 51-1 through 51-3.[2] The Court advised Mitchell that granting a motion to dismiss would be an adjudication of the case that could foreclose subsequent litigation on the matter and gave him an opportunity to respond. See Order (Doc. 10). Mitchell filed a response in opposition to the Motion. See Response (Doc. 54). Thus, Defendants' Motion is ripe for review.

## II. Plaintiff's Allegations[3]

Mitchell's First Amendment claims are based on three incidents: (1) Defendant Simpson's July 21, 2016 directive to Sergeant Peoples to obtain outgoing and incoming mail addressed to Mitchell; (2) Defendant Perkins October 14, 2016 tampering with incoming legal mail addressed to Mitchell from his attorney; and (3) Defendant Perkins March 23, 2017 tampering with outgoing non-legal mail addressed to Cynthia Caudill (Mitchell's wife). As to the underlying facts, Mitchell asserts that Defendant Simpson ordered Sergeant Peoples on July 21, 2016, to obtain and seize Mitchell's incoming and

---

[2] The Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

[3] In considering a motion to dismiss, the Court must accept all factual allegations in the FAC as true, consider the allegations in the light most favorable to Plaintiff, and accept all reasonable inferences that can be drawn from such allegations. Miljkovic v. Shafritz and Dinkin, P.A., 791 F.3d 1291, 1297 (11th Cir. 2015) (quotations and citations omitted). As such, the recited facts are drawn from the FAC and may differ from those that ultimately can be proved.

2

outgoing mail without Mitchell's knowledge and consent. See FAC at 10. He states that Peoples followed Simpson's directive. See id. Next, Mitchell alleges that Defendant Perkins delivered Mitchell's properly marked legal mail from his attorney (Sandra Young) on October 14, 2016. See id. at 8. According to Mitchell, when he noticed that the envelope had been opened outside of his presence, Perkins told him that he had taken photographs out of the envelope, and they would be stored with Mitchell's property. See id. Mitchell believes that Perkins read some of his legal mail because he inquired about the nature of Mitchell's case. See id. Mitchell avers that he gave Perkins a letter with an envelope addressed to Caudill on March 23, 2017. See id. at 8-9. He asserts that his letter to Caudill was "switch[ed] out" with someone else's letters, and therefore, Caudill received another inmate's letters inside the envelope addressed to her. Id.

Mitchell asserts that he spoke to Defendant Clark on April 4, and May 7, 2017. See id. at 9. He maintains that Clark intercepted grievances that Mitchell had submitted to Smith and Peoples, and Clark warned Mitchell to stop writing grievances. See id. Mitchell avers that Smith talked to him on April 11th about a written employee complaint Mitchell had submitted. See id. He maintains that he suffered headaches as a result of Defendants' actions, and he "felt" threatened, embarrassed, and depressed as his marriage went "downhill." Id. at 6.

### III. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's

3

World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262 63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give the court a license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Alford v. Consol. Gov't of Columbus, Ga., 438 F. App'x 837, 839 (11th Cir. 2011) (quoting GJR Invs., Inc. v. Cty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), overruled in part on other grounds as recognized in Randall, 610 F.3d at 706).

A court considering a motion to dismiss under Rule 12(b), Federal Rules of Civil Procedure (Rule(s)), is generally limited to the facts contained in the operative complaint and any attached exhibits, including documents referred to in the complaint that are central to the plaintiff's claims. See Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 959 (11th Cir. 2009). Nevertheless, when reviewing a motion to dismiss under Rule 12(b)(6), "a document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity." Maxcess, Inc. v. Lucent Techs., Inc., 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) (citing Horsley v. Feldt, 304 F.3d 1125, 1135 (11th Cir. 2002)); Day v. Taylor, 400 F.3d 1272, 1275-76 (11th Cir. 2005) (citation omitted).

### IV. Summary of the Arguments

In the Motion, Defendants maintain that Mitchell fails to assert facts to state plausible claims against them for violations of the First Amendment. See Motion at 6-14.

Additionally, Defendants assert that they are entitled to qualified immunity. See id. They submitted the following exhibits in support of the Motion: (1) Jacksonville Sheriff's Office (JSO) Order, Contraband Control and Handling, effective date November 1, 2018, see Doc. 51-1; (2) JSO Property Record Receipt, dated May 23, 2018, see Doc. 51-2; and (3) the docket in Mitchell's state-court criminal case number 16-2016-CF-004644-AXXX-MA, see Doc. 51-3. Defendants urge the Court to consider these "public records" as part of the Motion. Motion at 6 n.7. Additionally, they maintain that the Court should consider an excerpt from Defendant Simpson's police report (Simpson's Report) that Mitchell included in his SAC,[4] see Doc. 16 at 8, as well as the transcript of Mitchell's state-court plea proceeding, see Doc. 36-1, that Defendants previously attached to a motion to dismiss. See Motion at 6 n.7. In his Response, Mitchell states that Defendants violated his rights when they retained his non-legal and legal mail without his permission. See Response at 1. He maintains that he has sufficiently stated federal constitutional claims against Defendants. See id.

### V. Judicial Notice

At any stage of a proceeding, a court may take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The United States Court of Appeals for the Eleventh Circuit has cautioned that judicial notice should be

---

[4] Defendants recognize that Mitchell did not include the excerpt of Simpson's Report in the FAC, the operative complaint. See Motion at 6 n.7.

employed sparingly because it "bypasses the safeguards which are involved with the usual process of proving facts by competent evidence." Shahar v. Bowers, 120 F.3d 211, 214 (11th Cir. 1997). "[T]he kinds of things about which courts ordinarily take judicial notice are (1) scientific facts: for instance, when does the sun rise or set; (2) matters of geography: for instance, what are the boundaries of a state; or (3) matters of political history: for instance, who was president in 1958." Id.

In a habeas corpus case in which the district court addressed the issue of timeliness, the Eleventh Circuit held that the dates that the district court noticed from the online state-court dockets constituted "judicially noticed facts under Rule 201." Paez v. Sec'y, Fla. Dep't of Corr., 931 F.3d 1304, 1307 (11th Cir. 2019). Moreover, the Eleventh Circuit has determined that a court may take judicial notice of public records when ruling on a motion to dismiss. See Lozman v. City of Riviera Beach, Fla., 713 F.3d 1066, 1077 at n.9 (11th Cir. 2013) (taking judicial notice of state court documents for purposes of a Rule 12(b)(6) motion to dismiss in a § 1983 case). Generally, the Eleventh Circuit has distinguished between taking judicial notice of the fact that court records or court rulings exist and taking judicial notice of the truth of the matters stated within those court records or court filings. See Grayson v. Warden, Comm'r, Ala. DOC, 869 F.3d 1204, 1225 (11th Cir. 2017). Thus, judicial notice of related court cases can only be taken either to recognize the judicial act that the order represents or the subject matter of the litigation. See Thomas v. Sec'y, Fla. Dep't of Corr., 644 F. App'x 887, 888 (11th Cir. 2016) (per curiam) (taking "judicial notice of another court's order for the limited purpose of recognizing the 'judicial act'" that the order represented) (citation omitted); McDowell Bey

v. Vega, 588 F. App'x 923, 926-27 (11th Cir. 2014) (per curiam) (finding that district court properly took judicial notice of entries appearing on state court's docket sheet). Consistent with this authority, the Court takes judicial notice of the fact(s) of Mitchell's state-court criminal case and its docket entries only.

**VI. Discussion**

**A. First Amendment**

An inmate "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). Notably, censorship of a prisoner's incoming or outgoing mail "impinges on the interest in communication of both the inmate and the nonprisoner correspondent." Saxbe v. Washington Post Co., 417 U.S. 843, 865 (1974). The United States Court of Appeals for the Eleventh Circuit has stated that interference with an inmate's incoming or outgoing mail may implicate an inmate's right to freedom of speech. See Al-Amin v. Smith, 511 F.3d 1317, 1333 (2008). "Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment." Id. (citation omitted). Mitchell's free speech claim is distinct from an access-to-the-courts claim, and "he need not show any actual injury beyond the free speech violation itself to state a constitutional claim." Id.

Mitchell asserts that Simpson's directive to seize Mitchell's outgoing and incoming legal and non-legal mail initiated the confiscation and tampering. According to Mitchell, Simpson was "the main person" responsible for initiating and authorizing the mail tampering. FAC at 10. Defendants maintain that Simpson's Report shows that she had

8

probable cause to believe that Mitchell was conspiring to tamper with a witness in his state-court criminal case, and that he enlisted Caudill in the conspiracy. See Motion at 5. The Court declines to consider Simpson's Report since it is outside of the pleadings at the motion-to-dismiss stage of the litigation. According to Mitchell, Defendant Perkins tampered with his legal mail on October 14, 2016, and his non-legal mail on March 23, 2017, as a result of Simpson's directive, and Defendants Clark and Smith failed to correct the violations. Defendants maintain that the one alleged incident of opening legal mail neither shows an administrative pattern or practice or an unjustified interference with attorney-client mail. See Motion at 6, 12, 14. They also argue that the inspection of Mitchell's non-legal mail was "justified and lawful" and a "one-time mishap at best." Id. at 14. Notably, in the FAC, Mitchell states that Simpson's directive started the Jail's practice of mail confiscation and tampering. Liberally construing and taking Mitchell's assertions in the FAC as true, as the Court must at this motion-to-dismiss stage of the litigation, Mitchell provides sufficient facts to state First Amendment claims against Defendants. Thus, Defendants' Motion as to Mitchell's First Amendment claims against Defendants is due to be denied.

**B. Qualified Immunity**

Defendants assert that they are entitled to qualified immunity because they did not commit any federal statutory or constitutional violation. However, upon review of the FAC, the Court finds this assertion unavailing. The Eleventh Circuit has stated:

> The qualified-immunity defense reflects an effort to balance "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they

perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). The doctrine resolves this balance by protecting government officials engaged in discretionary functions and sued in their individual capacities unless they violate "clearly established federal statutory or constitutional rights of which a reasonable person would have known." Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010) (quotation marks and brackets omitted).

As a result, qualified immunity shields from liability "all but the plainly incompetent or one who is knowingly violating the federal law." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002). But the doctrine's protections do not extend to one who "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff]." Harlow v. Fitzgerald, 457 U.S. 800, 815, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (internal quotation marks and alteration omitted).

To invoke qualified immunity, a public official must first demonstrate that he was acting within the scope of his or her discretionary authority. Maddox v. Stephens, 727 F.3d 1109, 1120 (11th Cir. 2013). As we have explained the term "discretionary authority," it "include[s] all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir. 1994) (internal quotation marks omitted). Here, it is clear that Defendant Officers satisfied this requirement, as they engaged in all of the challenged actions while on duty as police officers conducting investigative and seizure functions.

Because Defendant Officers have established that they were acting within the scope of their discretionary authority, the burden shifts to [plaintiff] to demonstrate that qualified immunity is inappropriate. See id. To do that, [plaintiff] must show that, when viewed in the light most favorable to him, the facts demonstrate that Defendant Officers violated [plaintiff's] constitutional right and that that right was "clearly established ... in light of the specific context of the case, not as a broad general proposition[,]" at the time of Defendant officers' actions. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), overruled in part on other grounds by

> Pearson, 555 U.S. 223, 129 S.Ct. 808. We may decide these issues in either order, but, to survive a qualified immunity defense, [the plaintiff] must satisfy both showings. Maddox, 727 F.3d at 1120-21 (citation omitted).

Jones v. Fransen, 857 F.3d 843, 850-51 (11th Cir. 2017). The Court has instructed:

> Because § 1983 "requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation," Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (per curiam) (citation omitted), each defendant is entitled to an independent qualified immunity analysis as it relates to his or her actions and omissions. So[,] we must be careful to evaluate a given defendant's qualified immunity claim, considering only the actions and omissions in which that particular defendant engaged.

Alcocer v. Mills, 906 F.3d 944, 951 (11th Cir. 2018).

Thus, under the doctrine of qualified immunity, Defendants may claim that they are entitled to qualified immunity from monetary damages in their individual capacities. It is undisputed that Defendants were engaged in discretionary functions during the events at issue. To defeat qualified immunity as to these Defendants, Mitchell must show both that a constitutional violation occurred, and that the constitutional right violated was clearly established. The Court has determined that Mitchell has stated plausible First Amendment claims against Defendants, and therefore, Defendants are not entitled to qualified immunity at this stage of the litigation. Accordingly, Defendants' Motion as to their assertion of qualified immunity is due to be denied.

Therefore, it is now

**ORDERED**:

1. Defendants' Motion to Dismiss (Doc. 51) is **DENIED**.

2. Defendants, **no later than November 12, 2019**, must answer or otherwise respond to the FAC.

3. The parties shall conduct discovery, so the due date of any discovery requested is no later than **February 21, 2020**. Any motions relating to discovery shall be filed by **March 4, 2020**.

4. All motions to dismiss and/or for summary judgment shall be filed by **April 6, 2020**. This deadline is also applicable to the filing of any motions or the raising of any affirmative defenses based on qualified immunity.

5. Responses to any motions to dismiss and/or for summary judgment shall be filed by **April 30, 2020**.

6. The parties are encouraged to discuss the possibility of settlement and notify the Court if their efforts are successful. In doing so, Plaintiff and Defendants are encouraged to maintain a realistic approach in making and/or considering any settlement offers. If the parties are unable to settle the case privately, and want a Magistrate Judge to conduct a settlement conference, they should notify the Court.

7. As to the taking of Plaintiff's deposition, if necessary, the Court grants permission to Defendants' counsel. Defendants' counsel must contact the Warden of Plaintiff's institution to arrange an appropriate time and place for the deposition.

8. The Court expects strict compliance with the Court's deadlines.

**DONE AND ORDERED** at Jacksonville, Florida, this 16th day of October, 2019.

*Marcia Morales Howard*
MARCIA MORALES HOWARD
United States District Judge

sc 10/16
c:
Rico Lamont Mitchell, FDOC #J01049
Counsel of Record